EDITH F. WILSON
*vs.*
LOUIS N. WILSON

York.    Opinion, December 8, 1947.

*Lausier & Donahue,* for plaintiff.

*Wilfred A. Hay,* for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MURRAY, JJ.

THAXTER, J. · This in form is an action of debt on a judgment commenced by a writ of attachment against real estate. The plaintiff obtained a divorce from the defendant at the May Term 1927 of the Supreme Judicial Court for the County of York. Custody of a minor child was awarded to the libellant. The libellee, the present defendant, was ordered to "pay to the said Edith F. Wilson the sum of five dollars per week, for the support of said minor child. The first payment to become due and payable June 11, 1927, and, in default of payment, upon affidavit filed in the clerk's office, execution shall issue." On April 23, 1937 the libellant, the present plaintiff, filed the affidavit referred to in the divorce decree showing an amount due her to April 17, 1937 of $533.50 and execution was issued to her for such amount. No notice was ever given to the libellee of the filing of the affidavit, nor was any hearing ever had by the court to determine the amount due.

The declaration in the present action sets forth the above facts with respect to the decree of divorce, the issuing of the affidavit, the failure of the defendant to pay the amount of the execution, and in addition alleges that he has failed to pay any of the $5 weekly payments which have accrued from April 17, 1937 to July 16, 1946, which is apparently assumed to be the date when the child became of age. The defendant filed a plea "that no such record or judgment exists" as the plaintiff has set forth. The only evidence was as to the divorce, the issuing of the affidavit, and the plaintiff's testimony as to her not having been paid anything since April 17, 1937. This evidence was objected to. The presiding justice found for the plaintiff in the sum of $2,688.50 which was the amount of the original execu-

tion plus $5 per week thereafter for 431 weeks, which would seem to carry the time slightly beyond the child's twenty-first birthday, if the mother's testimony as to his age is correct. For the purposes of this case this discrepancy is immaterial. It may be that the year should have been 1946 as set forth in the declaration instead of 1945 as testified to by the mother. The record in the case is somewhat confused but the question is whether an action of debt on a judgment will lie under these circumstances. It is evident from the comments made by the learned judge who heard this action that he not only had grave doubts on this point but also whether any execution could properly have been issued on April 23, 1937 without notice to the libellee.

We believe that an action on a judgment was not in this case a proper remedy. The authorities are in great confusion as to whether installments of alimony, for maintenance, or for support of children are as they mature a component part of the judgment of the court which granted the divorce. This conflict arises because of the peculiar nature of the judgment in a suit for divorce. The case of *Sistare* v. *Sistare*, 218 U. S. 1; 54 L. Ed. 905, establishes the rule that the right to installments of alimony or for support becomes absolute and vested as they become due and that accordingly the decree requiring their payment is protected by the full faith and credit clause of the federal constitution provided no modification of the decree has been made prior to the maturity of the installments. But the opinion concedes that this rule does not obtain where "by the law of the state in which a judgment for future alimony is rendered, the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested right attaches to receive the installments ordered by the decree to be paid, even although no application to annul or modify the decree in respect to alimony had been made prior to the instalments becoming due." It is apparently assumed that if such is the rule

within the state granting the divorce there is no final or valid judgment within such state as to the installments until the court before which the proceedings were had forecloses such right to modification. This could of course be done by the entry of an order, after a hearing on proper notice, for execution to issue.

The case of *Barber* v. *Barber*, 323 U. S. 77; 89 L. Ed. 82, reinforces and amplifies the doctrine of the *Sistare* case and reiterates that the question is whether the right to the installments becomes vested as they mature.

The weight of authority seems to be that if there is reserved a right to revoke or modify accrued installments, an action on a judgment will not lie. *Allen* v. *Allen*, 100 Mass. 373; *Levine* v. *Levine*, 95 Ore. 94; *Bartholomae* v. *Stellwagen*, 277 Mich. 618; *Meister* v. *Day* (Ohio Court App. 1925) 151 N. E. 786; 27 C. J. S. 1035-1036.

In *Allen* v. *Allen, supra,* the Massachusetts court at page 376 makes it very clear that the proper method to enforce a decree for divorce is by some process from the court which entered the decree: "The jurisdiction over divorce and all its incidents is vested exclusively in this court; and we regard it as the necessary result to be collected from all the legislative provisions on the subject, that, within this Commonwealth, a decree for alimony made by this court can be enforced by it only, and not by an action on the decree in the Superior Court. In *Morton* v. *Morton*, 4 Cush. 518, *scire facias* was recommended as a proper process to enforce payment of arrears of alimony. But the elaborate discussion of the subject by Chief Justice Shaw, in that case, would have been superfluous, if not inappropriate, had it been regarded possible to bring an action of debt or assumpsit on the decree in this or any other Massachusetts court." It should be noted that at the time this case was decided decrees for alimony in Massachusetts were subject to revision and alteration, and that the court distinguishes this case from *Howard* v. *Howard,* 15 Mass. 196, for this reason.

In *Knapp* v. *Knapp*, 134 Mass. 353, the court points out that *scire facias*, which is not an original suit but a continuation of the original suit, is a proper remedy to enforce the judgment or decree for alimony. But the court suggests that it is not the exclusive remedy and that a more flexible and appropriate procedure is that suggested in *Slade* v. *Slade*, 106 Mass. 499, 501, "by petition, properly supported, an order of notice, returnable at such time as the court shall direct, and thereupon the court may order the issue of an execution, or such other process as may be appropriate to enforce payment. * * * A petition is usually preferable to a *scire facias*, because the proceeding is more speedy and flexible; but no order should be made without hearing or notice."

We are aware that *Stratton* v. *Stratton*, 77 Me. 373, was an action of debt to enforce the payment of a decree for alimony. There was involved there a contract between the parties incorporated in the decree of divorce for the payment of alimony which extended beyond the lifetime of the husband and was not subject to modification by the court. The right to such being vested, suit on a judgment was unquestionably a proper remedy in that case. Whether or not the amendment to our statute, R. S. 1944, Chap. 153, Sec. 62, providing that the court "may at any time alter, amend, or suspend a decree for alimony or specific sum when it appears that justice requires;" * * * applies under such circumstances we specifically do not decide.

We are concerned in the case now before us with a decree for support of a minor child and to that we devote our attention. We feel that the court issuing such a decree has the right to amend it both as to payments which are to be made in the future as well as to those which have already accrued but remain unpaid.

The court making a decree of divorce has wide powers to provide for custody and support of minor children. They are more often the chief sufferers from marital difficulties, and the court seeks to protect them as best it can. Their

interests are paramount. They are in a sense wards of the court which has dissolved the marriage relationship, and a payment ordered to be made to the mother for their support is not to be regarded by her as her property. She is rather the instrument selected by the court in its effort to provide for them; and it is her duty to use the money which she receives for their benefit during their minority. If there are unpaid installments which have not been applied by her for such support, the court unquestionably has the power to direct what disposition shall be made of these. It may divert them directly to the child's support. It may be that the father has made adequate provision for support in other ways, and it may be just that such action on his part should discharge his obligation under the decree. The court has a wide power in such cases. It may increase or decrease the amount and it may make its orders retroactive. The mother has no absolute property right in unpaid installments. Such is undoubtedly the intent of the statute which says, R. S. 1944, Chap. 153, Sec. 69, that the court "may also alter its decree from time to time as circumstances require," * * *. See the following cases: *Miller* v. *Miller*, 64 Me. 484; *Call* v. *Call*, 65 Me. 407; *Harvey* v. *Lane*, 66 Me. 526; *Stetson* v. *Stetson*, 80 Me. 483; *Luques* v. *Luques*, 127 Me. 356; *White* v. *Shalit*, 136 Me. 65.

Such being the statute which is here involved, it is apparent that an action of debt is not proper in the instant case. The decree for the payment of money to the mother of the minor for his support was subject to alteration in the discretion of the court at any time prior to his majority; and, when he became of age, the money remaining unpaid was not her property to be used by her for her own purposes. Whether she has any other remedy against the father it is not necessary here to determine. During the child's minority she did have the right to enforce the decree by the processes provided in the statute in so far as they were consistent with the due process requirements of the federal constitution, but she did not avail herself of them.

But right here is a further difficulty in the path of this plaintiff. Except for the execution issued April 23, 1937, and the affidavit on which it was based, which covered payments accruing to April 17th, there is no proof of any unpaid installments prior to that time. The execution was offered in this action brought on the judgment to prove that these early installments were unpaid. If any other force is claimed for it, the recent case of *Griffin* v. *Griffin*, 327 U. S. 220, 90 L. Ed. 635, establishes that it never had any validity, because it was issued without notice to the libellee. We discuss this problem because of its importance in the enforcement of future decrees for alimony and for support of children. It has been the practice in this state, at the time of the entry of a divorce decree with an order for alimony or support for children, for the judge to order that execution shall issue in case of default. On such order, execution has issued from the clerk's office as a matter of course. In view of the *Griffin* case, such practice should no longer be followed. That case holds that no valid judgment either *in personam* or *in rem* for unpaid installments of alimony which can form the basis for the issuance of a summary execution, and of course the same rule applies with respect to unpaid installments for maintenance of children, may be entered without some form of notice by personal or substituted service, sufficient to give to the debtor the opportunity to raise the defense of payment or such other defenses as may be open to him under the law of the forum. To permit a contrary procedure would, the case holds, violate the due process requirement of the federal constitution.

Such being the law, the course to be followed in this jurisdiction is clear. Unless the time is so short after the entry of the original decree of divorce that the issuance of an execution by the clerk can be regarded as a purely ministerial act, no execution for unpaid installments of alimony or support should be issued without notice to the libellee. Such execution should be issued as a continuation of the original divorce proceeding on a petition by the libellant

accompanied by an affidavit, and notice should be given as in other cases. This entails no undue hardship on the libellant; for, in case of a failure of the libellee to appear and contest, a default may be entered as in other cases. This is the exact procedure suggested by the Massachusetts court in the case of *Slade* v. *Slade, supra,* which lays down the admonition that "no order should be made without hearing or notice." We of course do not mean to say that this suggested procedure is exclusive of the other remedies authorized by the statute.

We are aware that the Legislature passed an act, P. L. 1947, Chap. 321, approved May 5, 1947, in an attempt to regulate the procedure on this subject. This statute, which is an amendment to R. S. 1944, Chap. 153, Sec. 63, provides for the issuance of a capias execution on default of any payment of alimony or any payment for support of minor children. The essential part of it reads as follows:

> "At the time of making a final decree in any divorce action, the court may order that execution and such reasonable attorney's fee as the court shall order shall issue against the body of any party to the action, charged with the payment of support of minor children or payments of alimony or a specific sum in lieu thereof, upon default of any payment, and the court shall order that the clerk of said court shall issue such execution upon the filing with the clerk an affidavit signed by the party to whom such payments are to be made, setting forth the amount in arrears under said decree."

This enactment if read literally is unconstitutional. It authorizes the issuance of execution without giving to the debtor any notice and without affording him an opportunity to come before the court and set up the defense of payment or any of the other defenses which he may be entitled to make. At the time it was passed the decision in the *Griffin* case, which holds that notice is necessary, had been on file for over a year. We cannot impute to the Legislature the

intent to ignore the requirement so clearly there set out. This enactment must therefore be interpreted to provide for the issuance of execution only after proper notice shall have been given.

It is not only better practice to give such notice but it is now a constitutional requirement.

*Exceptions sustained.*