MAINE SUPREME JUDICIAL COURT          Reporter of Decisions
Decision:     2020 ME 138
Docket:       BCD-20-122
Argued:      November 17, 2020
Decided:     December 15, 2020

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

MICHAEL ZELMAN et al.

v.

ANDREW ZELMAN et al.

JABAR, J.

[¶1] Andrew Zelman appeals from the Business and Consumer Docket's (*Duddy, J.*) entry of final judgment reaffirming a partial summary judgment on a complaint filed by Michael Zelman, individually and as personal representative of the Estate of Estelle Betty Zelman, and a counterclaim filed by Andrew and Zelman Family Business Holdings, LLC (ZFBH). In addition to claiming that the court made substantive errors in its judgment, Andrew argues that the court did not have subject matter jurisdiction. Contrary to Andrew's assertion, the Business and Consumer Court did have subject matter jurisdiction, and we affirm its entry of final judgment.

## I.  BACKGROUND

[¶2]   The following facts "are taken from the parties' statements of material facts and reflect the record as viewed in the light most favorable to [Andrew] as the nonprevailing party." *McCandless v. Ramsey*, 2019 ME 111, ¶ 4, 211 A.3d 1157.

[¶3]  ZFBH is a Nevada limited liability company whose principal place of business is in Seminole County, Florida.  ZFBH's sole asset is real property in the State of Maine.   A May 4, 2007, operating agreement governs the membership and management of the LLC, including the manner in which a manager can be appointed.

[¶4]  On the date that the operating agreement was signed, the managers were Victor Zelman, Estelle Betty Zelman, Andrew Zelman, and William Zelman.  Victor Zelman died in January 2015.  Andrew resigned as manager on February 28, 2015.   On November 9, 2015, William Zelman purported to appoint Andrew as a manager pursuant to section 13.20(A) of the operating agreement, and then later that same day, William resigned as a manager and sold his membership interest to Andrew.  Betty died on January 29, 2018.

[¶5]  On August 30, 2018, Michael, both individually and in his capacity as personal representative of the Estate of Estelle Betty Zelman, filed a

complaint in Superior Court (Oxford County), which, in part, asked the court to dissolve and liquidate ZFBH.[1]  The complaint listed Andrew Zelman and ZFBH as defendants, and listed Ellen Zelman, Steven Zelman, Katherine Zelman, AEZ Family Trust, Robert Zelman, and Lawrence Zelman as parties in interest.

[¶6]  Andrew and ZFBH filed an answer and counterclaim, which, in part, asked the court to grant a declaratory judgment and declare that William's actions reappointed Andrew as a manager of ZFBH.[2]  Michael Zelman filed a motion for summary judgment for his complaint and for the counterclaim. Andrew and ZFBH opposed the motion.  An application to transfer the case to the Business and Consumer Court was filed,[3] and a permanent transfer was ordered on January 28, 2019.

[¶7]  On February 20, 2019, the court heard oral arguments on the summary judgment motion, and on April 2, 2019, in a written order, granted a partial summary judgment.  As to Count one of Michael's complaint, the court

---

[1]  The other count of the complaint requested an accounting of actions undertaken by Andrew and an order requiring disgorgement of unauthorized income received.  The court granted judgment in favor of Andrew on this count.  This was not challenged on appeal.

[2]  The other counts of the counterclaim alleged breach of contract against Michael and unjust enrichment against Michael and the Estate.  The court granted judgment in favor of Michael on these two additional counts of the counterclaim.  This was not challenged on appeal.

[3]  The docket record does not reflect which party filed the application to transfer, but the application to transfer is in the record and it indicates that it was submitted by Michael and that all parties consented to the transfer.

4

granted a partial summary judgment in favor of Michael, concluding that Andrew ceased being a manager of ZFBH as of his March 1, 2015, resignation and that pursuant to the operating agreement, he was not able to rescind this resignation nor be reappointed by William on November 9, 2015. The court also granted Michael summary judgment on part of Andrew's counterclaim Count One, a request for a declaratory judgment, by declaring that Andrew is not a Manager of ZFBH.[4] However, the court denied Michael's request for dissolution of the company based on its determination that the conditions required by the operating agreement for dissolution had not been met.[5]

[¶8] On April 16, 2019, Andrew filed a motion to alter or amend the judgment pursuant to M.R. Civ. P. 59(e), which Michael opposed. On May 28, 2019, the court denied Andrew's motion, stating that it could not consider the extrinsic evidence attached to the motion because the evidence was not part of the summary judgment record and that, without that extrinsic evidence,

---

[4]  The court dismissed the remaining claims in Andrew's counterclaim Count One without prejudice.

[5]  The court found that the remaining manager, Betty, had died but that the operating agreement's process of managerial succession had not been complied with. The court also stated that even if the operating agreement's process of succession had been complied with, it would not issue a judicial dissolution because the operating agreement prohibits a member from petitioning for dissolution. Further, the court was not convinced that it had jurisdiction to dissolve this foreign business entity. No party has appealed from this portion of the court's judgment.

Andrew had failed to present "any new or persuasive basis" for it to reconsider its order.

[¶9]  In a written order dated March 5, 2020, the court entered a final judgment on both Michael's claims and Andrew's counterclaims. *See* Alexander, *Maine Appellate Practice* § 3.1(b) at 78 (5th ed. 2018) ("A judgment is final, and thus effective and enforceable, upon signature by the trial court.").  As to Count One of Michael's complaint, the court reaffirmed its previous order and concluded that Andrew is not a manager of ZFBH and that the sole remaining manager of ZFBH had died, but the court declined to dissolve ZFBH.

[¶10]  Andrew filed a notice of appeal on April 3, 2020.  Although the notice of appeal was not filed within twenty-one days of the entry of judgment as required by M.R. App. P. 2B(c)(1), it was timely because of the automatic extension provided by our Pandemic Management Orders.  Termination Date for Emergency Order Extending Unexpired Deadlines Relating to Law Court Appeals, PMO-SJC-2(D) (effective March 30, 2020).  Michael timely cross appealed, but later dismissed the cross-appeal pursuant to M.R. App. P. 4(a)(2)(B).

## II.  DISCUSSION

### A.    Jurisdiction

[¶11]   On appeal, Andrew argues that because the court considered whether it lacked jurisdiction to issue a judicial dissolution, then "it stands to reason that the [c]ourt could not make a determination as to Andrew's status as a [m]anager and the application and validity of Section 13.20(A) to appoint a [m]anager."

[¶12]   "Subject matter jurisdiction refers to the power of a particular court to hear the type of case that is then before it." *Hawley v. Murphy*, 1999 ME 127, ¶ 8, 736 A.2d 268 (quotation marks omitted).   "[A]n initial failure to challenge the subject matter jurisdiction of the court that issued the order does not preclude a party from raising the issue at a later time." *Id.*  "A judgment that is issued by a court that does not have subject matter jurisdiction to issue it is void." *Id.*

[¶13]   Here, Andrew requested a declaratory judgment from the court. The Maine Uniform Declaratory Judgments Act states that

> [c]ourts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed.  No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for.  The declaration may be either

> affirmative or negative in form and effect.  Such declarations shall have the force and effect of a final judgment or decree.

14 M.R.S. § 5953 (2020).  Here, pursuant to this Act, the BCD had subject matter jurisdiction to determine the "rights, status, and other legal relations" among the parties.    To the extent Andrew is challenging the court's personal jurisdiction over him, we note that Andrew affirmatively requested relief from the court.  *See Donn-Griffin v. Donn*, 615 A.2d 253, 254 (Me. 1992) ("In so invoking the jurisdiction of the court, [appellant] waived any lack of personal jurisdiction over him"); *Guardianship of Cardner*, 1998 ME 80, ¶ 9, 709 A.2d 731 ("Having sought the court's protection in this manner, [appellant] has submitted to its jurisdiction").

B.      Summary Judgment

[¶14]  Andrew contends that the court erred in determining that he was not a manager of ZFBH.  He argues that the court's interpretation of the operating agreement "is in contradiction to the plain meaning and intent of the original incorporators and the broad powers conferred onto the managers to ensure that the LLC would continue to operate without interference of the Members to attempt a sale of the farm."

[¶15]  "We review the entry of an order for summary judgment de novo for errors of law, viewing the evidence in the light most favorable to the party

8

against whom summary judgment was entered." *Puritan Med. Prods. Co. v. Copan Italia S.P.A.*, 2018 ME 90, ¶ 10, 188 A.3d 853. "When there is no genuine issue of material fact, we review de novo the trial court's interpretation and application of the relevant statutes and legal concepts." *Belanger v. Yorke*, 2020 ME 24, ¶ 13, 226 A.3d 215 (quotation marks omitted).

[¶16] ZFBH is a Nevada limited liability company and the parties all agree that Nevada substantive law applies.[6] Nevada law dictates that the operating agreement must be "interpreted and construed to give the maximum effect to the principle of freedom of contract and enforceability." Nev. Rev. Stat. § 86.286(4)(b) (2020).

[¶17] The Nevada courts first look to the plain language of the contract: "It has long been the policy in Nevada that absent some countervailing reason, contracts will be construed from the written language and enforced as written." *Kaldi v. Farmers Ins. Exch.*, 21 P.3d 16, 20 (Nev. 2001) (quotation marks omitted). However, to "determine whether a term is ambiguous, it should not be viewed standing alone, but rather in conjunction with the [agreement] as a

---

[6] We have adopted the Restatement (Second) Conflict of Laws' "most significant contacts and relationships approach." Flaherty v. Allstate Ins. Co., 2003 ME 72, ¶ 16, 822 A.2d 1159. For contract disputes, the "rights and duties of the parties with respect to an issue in contract are to be determined at the forum level by the local law of the state which, with respect to that particular issue, has the most significant relationship to the transaction and the parties." *Id.* (quotations marks omitted).

whole in order to give a reasonable and harmonious meaning and effect to all its provisions."[7]  *Fourth St. Place, LLC. v. Travelers Indem. Co.*, 270 P.3d 1235, 1239 (Nev. 2011) (quotation marks omitted).

[¶18]  Contrary to Andrew's assertion, here there is no genuine issue of material fact.  Rather, the only question is if the court correctly interpreted and applied section 13.20(A) of the operating agreement to determine that William did not have the authority to appoint Andrew as a manager.  That section states, in full:

> 13.20 Amendment. (A) The Manager has authority, without the vote or consent of the Members, to amend the Company Agreement to reflect the addition or substitution of Members or the Manager.

"Amend" means to "make minor changes in (a text) in order to make it fairer, more accurate, or more up-to-date."  *Amend,* New Oxford American Dictionary (3d ed. 2010).  Given this definition, the plain language of section 13.20(A) permits a manager to modify the operating agreement to update it based on decisions made in accordance with other sections of the operating agreement, e.g., section 2.7, which grants the members the ability to elect a manager by a

---

[7] "A contract is ambiguous if its terms may reasonably be interpreted in more than one way, but ambiguity does not arise simply because the parties disagree on how to interpret their contract. . . . Rather, an ambiguous contract is an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning."  *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013) (quotation marks omitted).

10

two-thirds majority, or section 10.10, which grants the members the ability to remove a manager for cause by a two-thirds majority

[¶19] Section 13.20(A) is not ambiguous, and the plain language of the contract clearly reflects a purely clerical role by a manager to alter the operating agreement to reflect decisions undertaken by the authority granted in other sections of the operating agreement. The court therefore did not err in determining that section 13.20(A) did not give William the authority to appoint Andrew as a manager of the LLC.

## III. CONCLUSION

[¶20] The Business and Consumer Court had subject matter jurisdiction pursuant to the Maine Uniform Declaratory Judgments Act, and personal jurisdiction because Andrew affirmatively requested declaratory relief from the court. Further, the court correctly interpreted the operating agreement to determine that William did not have the authority to appoint Andrew as a manager, and, as such, the last remaining manager, Estelle Betty Zelman, died on January 29, 2018. We affirm the judgment of the Business and Consumer Court.

The entry is:

Judgment affirmed.

Andre G. Duchette, Esq. (orally), Taylor, McCormack & Frame, LLC, Portland, for appellant Andrew Zelman

Jerrol A. Crouter, Esq. (orally), Drummond Woodsum, Portland, for appellee Michael Zelman

Zelman Family Business Holdings, LLC, Ellen Zelman, Steven Zelman, Katherine Zelman, AEZ Family Trust, Robert Zelman, and Lawrence Zelman did not file briefs

Business and Consumer Docket docket number CV-2019-08
FOR CLERK REFERENCE ONLY